JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Owen Visser

## DEFENDANTS

Sejal.1211, LLC, Muhammad Ijaz, Shaista, Ijaz

**(b)** County of Residence of First Listed Plaintiff  Cook County, Illinois
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Bucks County, PA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Arthur D. Goldman, Law Office of Arthur D. Goldman,
LLC, P.O. Box 115, Paoli, PA 19301; 484-343-2856

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☒ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                          *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☒ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**INTELLECTUAL PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br>☐ 880 Defend Trade Secrets Act of 2016 | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit (15 USC 1681 or 1692)<br>☐ 485 Telephone Consumer Protection Act<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** | ☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| | | | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File | |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 1332(a)
Brief description of cause:
Breach of Contract and Fraud related to real estate

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____  DOCKET NUMBER _____

DATE
December 12, 2025

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

10/2024

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: _Bucks County, PA_

---

***RELATED CASE IF ANY:*** Case Number: _____ Judge: _____

1. Does this case involve property included in an earlier numbered suit?     Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?     Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?     Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?     Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply?     Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A. Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☐ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
- ☐ 16. All Other Federal Question Cases. *(Please specify):* _____

*B. Diversity Jurisdiction Cases:*

- ☒ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)*: _____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)* _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **OWEN VISSER**<br>355 N. Halsted Street<br>Chicago, IL 60661<br><br>               Plaintiff<br>      v.<br><br>**SEJAL. 1211 LLC**<br>300 N. Easton Road<br>Horsham, PA 19044<br><br><br>     and<br><br><br>**MUHAMMAD IJAZ**<br>263 Clover Hill Court<br>Yardley, PA 19067<br><br>     and<br><br>**SHAISTA IJAZ**<br>263 Clover Hill Court<br>Yardley, PA 19067,<br><br>             Defendants | CIV. NO. |

## COMPLAINT

Plaintiff Owen Visser ("Mr. Visser" or "Plaintiff") by and through his attorney, Arthur D. Goldman, Esquire, hereby files this complaint against Defendants Sejal.1211 LLC (the "Business"), Muhammad Ijaz ("Mr. Ijaz") and Shaista Ijaz ("Mrs. Ijaz") (collectively "Defendants") as follows:

### Parties

1.    Plaintiff Owen Visser is an adult individual whose residence is at 355 N. Halsted Street, Chicago, IL 60661.

2.    Defendant Sejal.1211, LLC is a Pennsylvania limited liability company whose principal place of business is located at 300 N. Easton Road, PA 19044.

3.    Defendant Muhammad Ijaz is an adult individual whose residence is at 263 Clover Hill Court, Yardley, PA 19067.

4.    Defendant Shaista Ijaz is an adult individual and the spouse of Muhammad Ijaz whose residence is located at 263 Clover Hill Court, Yardley, PA 19067.

### Jurisdiction and Venue

5.    This action arises under 28 U.S.C. §1332(a) which provides for original jurisdiction of plaintiff's claims based on diversity of citizenship and where the amount in controversy exceeds $75,000.00.

6.    Venue in this district is appropriate pursuant to 28 U.S.C. §1391(b) because the Defendants are residents of this district and the cause of action complained of arose in this district.

<u>**Facts**</u>

7.     The Business was the sole owner real estate and improvements thereon consisting of a gas station and convenience store located at 300 N. Easton Road, Horsham, PA 19044 (the "Property").

8.     In June 2019, Mrs. Shaista Ijaz was the sole owner of the Business and was looking to bring in an additional owner/investor in the Business with the idea of raising capital.

9.     In June 2019, Mrs. Ijaz and Mr. Visser entered discussions for Mr. Visser to become an additional owner and investor.

10.     On June 27, 2019, Mrs. Ijaz entered into an Agreement to Transfer Membership in Sejal. 1211, LLC (the "Agreement") whereby Mr. Visser was to take a 50% ownership interest in the LLC following the completion of certain investment parameters.  (A copy of the Agreement is attached hereto as Exhibit "A.")

11.     The parties agreed on a valuation of $625,000.00 for 50% of the LLC. (Exhibit A, ¶2).

12.     Mr. Visser made an initial payment of $350,000.00 as of the time of signing with a remaining balance due of $275,000.00 to be paid within 24 months. (Exhibit A, ¶¶ 3-5).

13.     Upon the completion of payments by Mr. Visser, the parties agreed they would effectuate the transfer of the 50% of the LLC to Mr. Visser.  (Exhibit A, ¶7).

14.     The parties also agreed that upon the completion of the payments, Mr. Visser would receive his share unencumbered by any mortgage obligations.  (Exhibit A, ¶9).

3

15.     It was also agreed that Mr. Visser was to receive a monthly pro rata dividend percentage of the profits based on his ownership percentage at the time, which was generating approximately $10,000.00 in profits a month. (Exhibit A, ¶6).

16.     Notwithstanding Mr. Visser's fulfillment of all of his obligations by November 30, 2020, he did not receive any payments from Sejal. 1211, LLC or the other parties, either before or after, nor has Mrs. Ijaz made the agreement transferring the 50% interest as required by the Agreement.

17.     In an effort to resolve things, on Sunday, February 21, 2021, the Defendants tentatively agreed to sell the property for approximately $1,900,000.00 and to share the proceeds 50/50 with Mr. Visser.

18.     Nevertheless, Mr. Visser had decided to reject that proposal and instead receive what he is owed, including his investment funds and profits, of $700,000.00.

19.     Since March 24, 2021, certain additional discussions between the Mr. and Mrs. Ijaz and Mr. Visser took place.

20.     Shortly thereafter, the parties became embroiled in a controversy as to what was owed to Mr. Visser which led to him bringing suit against the parties, including Mrs. Ijaz, which action was filed in the Court of Common Pleas for Bucks County on August 18, 2021, amended on October 15, 2021 titled Visser v. Sejal.1211 LLC, No. 2021-04478-40. (A copy of the Amended Complaint (minus Exhibits) is attached hereto as Exhibit "B").

21.     After considerable litigation, the parties opted for a mediation which was held on March 4, 2022.

22.    The outcome of the mediation was that the parties entered into a binding agreement, signed by Mr. Ijaz on behalf of all defendants, whereby Mr. Visser's equity interest on the sale of the real property owned by Sejal 1211, LLC identified as 300 North Easton Road, Horsham, PA ("Property") was such that (i) Mr. Visser would receive 32% of the profits upon the sale of the Property for any amount received up to $1,250,000; and (ii) Mr. Visser shall receive 50% of the profits from the sale of the Property for any amount over $1,250,000.  (Paragraph 1, Mediation Settlement Agreement, a copy of which is attached hereto as Exhibit "C").

23.    In paragraph 2 of the Mediation Settlement Agreement, it was further acknowledged and agreed by the undersigned parties that the Commercial Lease dated April 8, 2021, was to be amended to provide that Mr. Visser would receive $2,500 per month beginning April 1, 2022 (rather than the $3,250 set forth in the Lease), and Mr. Visser should also receive the sum of $15,000 on April 1, 2022, as full payment for any amounts due and owing under the Lease to Mr. Visser (i.e. arrearage).

24.    Between April 2022 and January 1, 2025, Mr. Visser received payments of $2,500.00 per month as expected but no more, especially the lump sum due for the arrearage.

25.    On January 10, 2025, Mr. Ijaz called Mr. Visser telling him that he was going to sell the Property.

26.    Mr. Visser told Mr. Ijaz to start with at least $1.8 million but to reduce to $1.5 million if no offers came in at that number.

27.    On January 29, 2025, Mr. Ijaz notified Mr. Visser that he had an offer of $1.5 million but had nothing in writing.

5

28.    On March 3, 2025, Mr. Ijaz called Mr. Visser and said he had a confirmed buyer at $1,435,000.00 and he should please send him an acceptance via WhatsApp.

29.    Mr. Visser responded on March 4, 2025 and deliberately entered the wrong price of $1,425,000.00 with his share being $525,000 knowing Mr. Ijaz would correct the mistakes and that would prove what Mr. Ijaz told him telephonically on March 3, 2025. (A copy of the WhatsApp messages are attached hereto as Exhibit "D")

30.    Following this, Mr. Ijaz called Mr. Visser and asked him if he wanted to participate in a mortgage agreement to which Mr. Visser replied he would rather receive his money instead and be done with the Property.

31.    On March 28, 2025, Mr. Ijaz sent Mr. Visser an agreement which did not mention $1,435,000.00 but did mention his share of $492,500.00, and not $525,000.00 as Mr. Visser mentioned, made up as follows:

32% of $1,250,000.00.,,,....... =$400,000.00

50% of  $185,000.00..,,..........=$92,500.00;

with totals of $1,435,000.00  and $492,500.00. (A copy of the Agreement is attached hereto as Exhibit "E").

32.    Mr. Ijaz said the Defendants would pay Mr. Visser in full by the end of June 2025 which persuaded Mr. Visser to reduce the monthly payment from $2,500.00 to $1,500.00.

33.    Mr. Visser signed this agreement but with the understanding that the selling price was $1,435,000.00 as Mr. Ijaz stated on March 3, 2025.

34.    On April 16, 2025, Mr. Ijaz wired Mr. Visser $100,000.00 and on May 15, 2025 sent another $50,000.00 with a promise that the balance would be sent at the end of June.

35.    Defendants failed to send the balance by the end of June, and by July when Defendants failed to pay the full balance owed, Mr. Visser notified Mr. Ijaz that the Defendants must pay the full $2,500.00/month as arrearages as Defendants breached their agreement.

36.    On September 4, 2025, Defendants sent Plaintiff another $25,000.00, but since then, Plaintiff has received nothing.

37.    To date, Mr. Visser has not received a copy of the offer to purchase which he repeatedly asked for or a copy of the closing statement nor has he received any additional payments.

38.    Subsequently, Mr. Visser was stunned to find out that Defendants had actually sold the station for $2.05 million dollars, which was $570,000.00 more than what Defendants told Mr. Visser. (A copy of a webpage showing the actual sales price is attached hereto as Exhibit "F").

39.    This difference of $570,000.00 which was deliberately and intentionally hidden and concealed from Mr. Visser deprived him of $285,000.00 rightfully owed to him.

40.    As a result of the Defendants' fraudulent deception and intentional misstatements and misrepresentations, Mr. Visser should have been paid $777,500.00 and to date, has only been paid $175,000.00

## COUNT I – BREACH OF CONTRACT

41.     Plaintiff incorporates by reference Paragraphs 1 through 40 of his Complaint as if set forth at length herein.

42.     Pursuant to the terms of the Mediation Settlement Agreement between the parties, Defendants were to pay Mr. Visser $777,500.00 out of the proceeds of the sale of the Property.

43.     To date, Defendants have only paid $175,000.00 of the amounts owed from the sale.

44.     Defendants continue to owe Plaintiff $627,500.00 out of the proceeds of the sale of the Property in addition to the arrearages of $1,000.00/month since June 2025.

45.     Defendants have breached the terms of the agreements with Plaintiff by failing to pay as agreed and by engaging in bad faith behavior.

46.     In contrast, Plaintiff has fully complied with all of his obligations.

47.     As a direct and proximate result of Defendants' conduct, Plaintiff has and shall sustain monetary damages including attorneys' and related litigation costs and other damages to be established at the trial of this matter.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants for:

(1) Compensatory damages in amount no less than $627,500.00;

(2) Additional consequential damages;

(3) Court fees and costs; and

(4) Such other and further relief as this Court deems appropriate.

8

## COUNT II–FRAUD (AGAINST IJAZ DEFENDANTS)

48.    Plaintiff incorporates by reference Paragraphs 1 through 47 of this Complaint as if set forth at length herein.

49.    In order to induce Plaintiff to sign a revised agreement related to the sale of the Property, Defendants intentionally misrepresented and concealed the actual sales price of the Property.

50.    Moreover, at that time, Defendants intentionally concealed from Plaintiff that the sales price was $2.05 million rather than $1.435 million.

51.    By doing so, Defendants intentionally swindled out of $285,000.00 he would have otherwise been owed and paid.

52.    All of the actions taken by Defendants Mr. and Mrs. Ijaz were intentional and with the purpose of deceiving Plaintiff to deprive him of his legal right to compensation for his ownership share of the Property.

53.    At the time Defendants made these representations, they knew them to be false.

54.    Defendants' material misrepresentations were made with either actual knowledge of their falsity or in reckless disregard of their truth and falsity.

55.    In justifiable reliance upon the representations of Defendants, Plaintiff agreed to accept the money owed on a $1.435 million sale, rather than the actual concealed $2.05 million sale.

56.    As further proof of Defendants' fraudulent intent, they refused to produce any documentation of the sale of the Property

57.    Plaintiff would never have agreed to a revision of terms had he known of Defendants' deception.

58.    Plaintiff finally realized recently that Defendants were never going to honor the promises they made and that he had been defrauded by them.

59.    Defendants are liable for the misrepresentations made.

60.    As further proof of Defendants' bad faith and fraud, they have not even paid Plaintiff what would have been owed under the lower amount claimed for the sale, $1.435 million.

61.    Defendants' conduct was shocking and outrageous.

62.    The actions of Defendants entitle Plaintiff to recover punitive damages.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants for all damages incurred by the Plaintiff as a result of Defendants' fraud, for all costs and attorneys' fees incurred, punitive damages, and for such other and further relief as this Court deems appropriate and just.

### JURY TRIAL DEMAND

Plaintiff hereby makes his request for a jury trial for all claims raised in this action.

Arthur D. Goldman
Attorney for Plaintiff Owen Visser
P.O. Box 115
Paoli, PA 19301
(484) 343-2856

Dated:  December 12, 2025

## <u>CERTIFICATION</u>

I, Arthur D. Goldman, Esquire, attorney for Plaintiff Owen Visser, pursuant to 28 U.S.C. §1746, herby certify under penalty of perjury under the laws of the United States of America that the foregoing Complaint is true and correct to the best of my knowledge, information and belief.

Arthur D. Goldman, Esquire

Dated: December 12, 2025

# EXHIBIT A

# AGREEMENT TO TRANSFER MEMBERSHIP INTEREST
# IN
# SEJAL. 1211, LLC

**THIS AGREEMENT**, made this 27ᵗʰ day of June, 2019, effective according to the terms outlined herein, by and between **SEJAL. 1211 LLC**, a Pennsylvania limited liability company, and **OWEN DAVID TRAVER VISSER**.

**WHEREAS**, on or about March 12, 2012, SEJAL. 1211 LLC was formed as a Pennsylvania limited liability company with a principal place of business of 300 N. Easton Road, Horsham, Pennsylvania; and,

**WHEREAS**, Shaista Ijaz, who resides at 263 Clover Hill Court, Yardley, PA 19067, is the only member of SEJAL 1211 LLC; and,

**WHEREAS**, Shaista Ijaz, as the sole member of SEJAL. 1211 LLC signed an Operating Agreement ("the Agreement") in connection with the organization of SEJAL. 1211 LLC; and,

**WHEREAS**, pursuant to the terms of said Agreement, Shaista Ijaz possesses an undivided one-hundred percent (100%) interest in SEJAL. 1211 LLC (hereinafter the "LLC"); and,

**WHEREAS**, said interests have continued unamended from that date until the date of this Agreement; and,



**WHEREAS**, Shaista Ijaz ("Ijaz") desires to transfer fifty percent (50%) of her ownership interest in the LLC to Owen David Traver Visser ("Visser"), who resides at 651 Palmer Lane, Yardley, PA 19067, according to the terms outlined herein.

**NOW, THEREFORE**, in consideration of the mutual covenants and undertakings herein set forth and intending to be legally bound hereby, the parties hereto agree as follows:

1. Ijaz and Visser have entered into an agreement whereby Ijaz shall transfer fifty percent (50%) of her membership interest in the LLC to Visser pursuant to the terms which follow.

2. Ijaz and Visser agree that the fifty percent (50%) share of SEJAL. 1211 LLC which Visser is acquiring is worth Six Hundred and Twenty-Five Thousand Dollars ($625,000.00).

3.    Ijaz and Visser represent and warrant that Visser has provided payment to Ijaz in the amount of Three Hundred and Fifty Thousand Dollars ($350,000.00), with said payment evidencing Visser's intent to acquire fifty percent (50%) of Ijaz's interest in the LLC.

4.    Ijaz and Visser mutually acknowledge that Visser owes remaining payments to Ijaz for the aforesaid ownership interest in the amount of Two Hundred and Seventy-Five Thousand Dollars ($275,000.00).

5.    Ijaz and Visser agree and acknowledge that payment of the remaining Two Hundred and Seventy-Five Thousand Dollars ($275,000.00) ("final payment") shall be made on or before twenty-four (24) months of the date of execution of this Agreement.

6.    Ijaz and Visser agree that Visser, until the date final payment is made, shall receive a monthly dividend on a pro rata basis in accordance with profits generated by the LLC. Specifically, the parties agree that the LLC's estimated valuation, for purposes of this Agreement, is One Million Two Hundred and Fifty Thousand Dollars ($1,250,000). Visser's pro rata dividend shall be in a percentage amount directly proportional to the valuation of the LLC. To wit, Visser's initial payment of Three Hundred and Fifty Thousand Dollars ($350,000.00) shall entitle Visser to a monthly payment in the amount of twenty-eight percent (28%) of the net profits of the LLC, with this amount being derived from a fractional calculation of Visser's initial payment as compared to the overall valuation of the LLC. In the event that Visser provides additional payments in advance of the final payment, his entitlement to payment shall be adjusted and prorated accordingly. Should Visser not tender final payment to Ijaz in the amount of Two Hundred and Seventy-Five Thousand Dollars ($275,000.00), Visser shall remain entitled to the pro rata shall of the profits of the LLC in accordance with the payment amount provided to Ijaz.

7.    After Visser makes final payment to Ijaz in the amount of Two Hundred and Seventy-Five Thousand Dollars ($275,000.00), Ijaz shall effectuate the transfer of her fifty percent (50%) ownership interest, and the rights and responsibilities of Ijaz and Visser shall be thereafter outlined in the LLC's Amended Operating Agreement ("Amended Operating Agreement").

8.    It is understood and agreed by Visser and Ijaz that the Amended Operating Agreement shall include, but not be limited to, the following additional provisions: 1) Ijaz and Visser each conducting their due diligence and undertaking good faith efforts to secure successor

tenants for 300 N. Easton Road, Horsham, Pennsylvania; 2) Ijaz and Visser being equally responsible for costs associated with necessary repairs and/or upgrades to 300 N. Easton Road, Horsham, Pennsylvania; 3) Ijaz and Visser mutually providing the other a right of first refusal with respect to their respective shares of the LLC; and 4) Ijaz assuming any financial responsibility to claims or liens on behalf of the LLC which predate Visser's acquisition of a fifty percent (50%) ownership interest in the LLC.



9.    Notwithstanding the above, Ijaz and Visser acknowledge that 300 N. Easton Road, Horsham, Pennsylvania is encumbered with an existing mortgage; it is the intent of Visser and Ijaz for Visser, upon final payment to Ijaz, to receive a fifty percent (50%) interest in the LLC unencumbered by the aforesaid mortgage obligations.

10.   As Visser's interest in the LLC does not vest until final payment is received by Ijaz, Visser shall have no legal liability or responsibility with respect to any claims or liens against the LLC until final payment is made.

11.   Ijaz hereby represents to the LLC and to Visser that, to the best of her knowledge, her membership interest in the LLC is free and clear of all encumbrances and that she has the unrestricted power to transfer her interest to Visser.

12.   This Agreement is intended to effectuate and evidence the transfer of half of Ijaz's membership interest in the LLC to Visser, once the terms outlined herein are met by Visser.

13.   The parties agree that once the terms outlined herein are met, an Amended Operating Agreement evidencing the aforesaid equal fifty percent (50%) ownership interest will be executed.

14.   While Ijaz and Visser mutually acknowledge receipt of prior payment in the amount of Three Hundred and Fifty Thousand Dollars ($350,000.00), the transfer of Ijaz's fifty percent (50%) interest shall not be effective until date final payment is received.

15.   Visser acknowledges and understands that he has been advised of his right to retain counsel and review this Agreement and the terms outlined herein, and further, Visser is entering into this Agreement knowingly and agrees to abide by the terms herein.

16.   This Agreement shall be interpreted, construed and governed according to the laws of the Commonwealth of Pennsylvania.

17.    No amendment, modification or waiver of any provision of this Agreement shall be made except by an instrument in writing signed by the parties charged.

18.    For the purposes of the foregoing agreement, Ijaz and Visser acknowledge that this Agreement supersedes any prior understanding or agreement, oral or written.

19.    This Agreement and the documents referenced herein constitute the entire agreement of the parties hereto with respect to the matters set forth herein and supersedes any prior understanding or agreement, oral or written, with respect thereto.

20.    This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which when taken together shall constitute one and the same instrument. Each party is hereby authorized to rely upon and accept as an original any executed copy of this Agreement which is sent by facsimile, telegraphic or other electronic transmission.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the day and year first above written.

WITNESS                                                SEJAL 1211 LLC

                                                       By.
                                                           Shaista Ijaz, Member


                                                       OWEN DAVID TRAVER VISSER

{00875071-}                                  4

COMMONWEALTH OF PENNSYLVANIA     :
                                 :  ss
COUNTY OF                        :

On this 27th day of June , 2019, before me, the undersigned officer, personally appeared SHAISTA IJAZ, who resides at 263 Clover Hill Court, Yardley, PA 19067, and who acknowledged herself to be the managing member of SEJAL. 1211 LLC, a Pennsylvania limited liability company, and that as such managing member, being authorized to do so, executed the foregoing instrument for the purposes therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and notarial seal.

```
NOTARIAL SEAL
Roxana M. Petrikis, Notary Public
Lower Makefield Twp, Bucks County
My Comm. Exp. September 08, 2020
```

Roxana M Petrikis
NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA     :
                                 :  ss
COUNTY OF BUCKS                  :

On this, the 27th day of June , 2019, before me, the undersigned officer, personally appeared OWEN DAVID TRAVER VISSER, who resides at 651 Palmer Lane, Yardley, PA 19067, satisfactorily proven to me to be the person whose name is subscribed to the within document, and acknowledged that he executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

```
NOTARIAL SEAL
Roxana M. Petrikis, Notary Public
Lower Makefield Twp, Bucks County
My Comm. Exp. September 08, 2020
```

Roxana M Petrikis
NOTARY PUBLIC

{00875071/}
5

# EXHIBIT B

ARTHUR D. GOLDMAN
ATTORNEY I.D. No. 56983
P.O. Box 115
Paoli, PA 19301
(484) 343-2856

ATTORNEY FOR PLAINTIFF
OWEN VISSER

---

| | |
|---|---|
| **OWEN VISSER,** | : COURT OF COMMON PLEAS<br>: BUCKS COUNTY<br>:<br>: CIVIL ACTION |
| Plaintiff, | :<br>: |
| v. | : NO. 2021-04478<br>: |
| **SEJAL. 1211 LLC** | :<br>: |
| and | :<br>: |
| **SHAISTA IJAZ** | :<br>: |
| and | :<br>: |
| **SHAISTA IJAZ** | :<br>: |
| Defendants | :<br>: |

## AMENDED COMPLAINT

Plaintiff Owen Visser ("Mr. Visser" or "Plaintiff") by and through his attorney,
Arthur D. Goldman, Esquire, hereby files this Amended Complaint against Defendants
SEJAL.1211 LLC (the "Business"), Shaista Ijaz ("Mrs. Ijaz") and Muhammad Ijaz ("Mr.
Ijaz") (collectively "Defendants") as follows:

### Parties

1.    Plaintiff Owen Visser is an adult individual whose residence is at 1610
Lakeview Circle, Tanglewood Yardley, Yardley, PA 19067.

2.      Defendant SEJAL.1211, LLC is a Pennsylvania limited liability company whose principal place of business is located at 300 N. Easton Road, Horsham, PA 19044.

3.      Defendant Shaista Ijaz is an adult individual whose residence is at 263 Clover Hill Court, Yardley, PA 19067.

4.      Defendant Muhammad Ijaz is an adult individual whose residence is at 263 Clover Hill Court, Yardley, PA 19067.

5.      Venue and jurisdiction are proper in this county pursuant to Pa. R. Civ. P. 1006 in that the majority of the parties are located in and the causes of action complained of herein arose in Bucks County.

**Facts**

6.      The Business is the sole owner of real estate and improvements thereon consisting of a gas station and convenience store located at 300 N. Easton Road, Horsham, PA 19044 (the "Property").

7.      In June 2019, Mrs. Ijaz was the sole owner of the Business and was looking to bring in an additional owner/investor in the Business with the idea of raising capital.

8.      In June 2019, Mrs. Ijaz and Mr. Visser entered into discussions for Mr. Visser to become an additional owner and investor.

9.      On June 27, 2019, Mrs. Ijaz entered into an Agreement to Transfer Membership in SEJAL. 1211, LLC (the "Agreement") whereby Mr. Visser was to take a 50% ownership interest in the LLC following the completion of certain investment parameters. (A copy of the Agreement is attached hereto as Exhibit "A.")

10.     The parties agreed on a valuation of $625,000.00 for 50% of the LLC.

(Exhibit A, ¶2).

11.     Mr. Visser made an initial payment of $350,000.00 as of the time of signing with a remaining balance due of $275,000.00 to be paid within 24 months. (Exhibit A, ¶¶ 3-5). The $350,000 consisted of $100,000 that was previously loaned to Muhummad Ijaz according to an Agreement signed between Mr. Visser and Mr. Ijaz and dated June 12, 2018 (the "Loan Agreement") and an additional $250,000 provided by Mr. Visser.

12.     Upon the completion of payments by Mr. Visser, the Mrs. Ijaz agreed to effectuate the transfer of the 50% of the LLC to Mr. Visser. (Exhibit A, ¶7).

13.     The parties also agreed that upon the completion of the payments, Mr. Visser would receive his share unencumbered by any mortgage obligations. (Exhibit A, ¶9).

14.     It was also agreed that Mr. Visser was to receive a pro rata dividend payment of the monthly profits based on his ownership percentage at the time from a lease to a tenant who was paying approximately $10,000,00 per month in rent (Exhibit A, ¶6). To date, Mr. Visser has never received a payment of the profits generated from the rental payments made by that tenant.

15.     Also included in the Agreement was a clause that Mr. Visser was advised of his right to retain counsel to review the Agreement. (Exhibit A, ¶15).

16.     Mr. Visser met, and exceeded, his payment obligations by making payments on the following dates:

| 06/27/19 | $350,000.00 |
| 09/12/19 | $70,000.00 |

3

| | |
|---|---|
| 12/09/19 | $95,000.00 |
| 02/15/20 | $45,000.00 |
| 01/24/20 | $10,000.00 |
| 03/08/20 | $9,900.00 |
| 04/10/20 | $19,800.00 |
| 09/30/20 | $5,000.00 |
| 10/01/20 | $5,000.00 |
| 10/02/20 | $5,000.00 |
| 10/06/20 | $9,900.00 |
| 10/07/20 | $9,900.00 |
| 10/08/20 | $19,900.00 |
| 12/11/20 | $19,000.00 |
| 12/11/20 | $1,000.00 |
| 11/24/20 | $10,000.00 |
| 01/04/21 | $20,000.00 |
| 01/18/21 | $4,500.00 |
| 02/06/21 | $2,000.00 |
| Total Paid: | $700,000.00 |

17.    The Agreement does not have a specific mechanism for allocating contributions/payments from Mr. Visser to anything other than the remaining "final payment" of Two Hundred and Seventy-Five Thousand Dollars explicitly called for in Paragraph 4. (Exhibit A, ¶4). The Agreement was that whatever funds Mr. Visser paid to Defendants would be applied to his ownership interest, regardless of what the Defendants

4

used it for.

18.    Mr. Visser believed all payments made were being allocated to the "final payment" as required in Paragraph 4. Mr. Visser believed any "costs associated with necessary repairs and/or upgrades" to the Property would be presented to him in detail, would be accounted for separately, and although he was knowingly making payments toward repairs and/or renovations in the property, it was understood between the parties that such payments would be counted toward his acquisition of the 50% Membership Interest, as implied by the Agreement. (Exhibit A, ¶4).

19.    Mr. Visser has repeatedly requested a full written accounting with accompanying documentation of all renovation costs from Mr. and Mrs. Ijaz to confirm how much they contributed to each repair/renovation project. To date, no accounting has been provided by Mr. or Mrs. Ijaz.

20.    The renovations and repairs paid for exclusively by Mr. Visser led directly to the value of the property increasing from One Million Two Hundred and Fifty Thousand Dollars ($1,250,000.00) to Two Million Three Hundred Thousand Dollars ($2,300,000.00).

21.    Notwithstanding Mr. Visser's fulfillment of all of his obligations by November 30, 2020, he has to date never received any payments from SEJAL. 1211, LLC or the other parties, either before or after, nor has Mrs. Ijaz made the agreement transferring the 50% interest as required by the Agreement.

22.    In an effort to resolve things, on Sunday, February 21, 2021, the Defendants tentatively agreed to list the Property for sale for approximately $1,900,000.00 and to share the proceeds 50/50 with Mr. Visser. The $1.9 Million sale

price was roughly $400,000 lower than the value of the property, as determined by Broker Bennett Williams Commercial. The parties agreed to use a reduced sale price to prompt a faster sale.

23.    Mr. Visser decided to accept that proposal but subsequently the Defendants attempted to change those terms by reducing Mr. Visser's ownership share.

24.    On March 1 and again on March 21, 2021, counsel for Mr. Visser wrote to Mrs. Ijaz describing the issues and concerns of Mr. Visser and placing Defendants on notice that Mr. Visser was now being represented by counsel.

25.    Since March 24, 2021, certain additional discussions between the Mr. and Mrs. Ijaz and Mr. Visser have taken place.

26.    Although he was aware Mr. Visser was represented by counsel, Mr. Ijaz called and presented Mr. Visser with a proposed commercial lease agreement dated April 8, 2021 ("Commercial Lease") in which Mr. Muhammad Ijaz, the husband of Mrs. Ijaz, would be the tenant. Mr. Visser tentatively agreed. (The Commercial Lease contained confidential personal identification information which has been redacted from the exhibit. A redacted copy of the Commercial Lease is attached hereto as "Exhibit B.")[1]

27.    The Commercial Lease was presented to Mr. Visser by the Ijazes without Mr. Visser's attorney's knowledge or review, even though Defendants where fully aware Mr. Visser had retained counsel.

28.    It is especially telling that this new Commercial Agreement was entirely lacking an attorney review provision as in the previous Agreement.

29.    Unfortunately, at the time of presentation of the Commercial Lease, Mr.

---

[1] The Commercial Lease contained confidential personal identification information which has been redacted from the signature area on Page 3 of Exhibit B).

6

Ijaz concealed and failed to mention school tax arrears which he had not paid and which Mr. Visser subsequently found out were considerably in arrears.

30.     This issue was intentionally hidden even though paragraph 6 of the Commercial Lease clearly stated that the tenant, (Muhammad Ijaz), would be responsible for all utilities except school taxes from the commencement of that lease and not for any taxes in arrears.

31.     Nevertheless, as per a discussion on April 7, 2021, the school tax was to be Mr. Ijaz's responsibility.

32.     Without Mr. Visser realizing it, Mr. Ijaz had deviously inserted that clause into the final agreement that was to be notarized the next day.

33.     Fortunately, Mr. Visser saw it before signing.

34.     Mr. Visser refused to sign as Defendants tried to mislead him by adding in that clause.

35.     Mrs. Ijaz begged Mr. Visser to accept it claiming it would only cost him $3,000.00 per year.

36.     Eventually, Mr. Visser reluctantly agreed to the clause, believing it only applied to future school taxes, not those in arrears.

37.     Mr. Visser agreed to pay school taxes going forward in a good faith attempt to help the LLC, even though he had no legal obligation to do so, because Paragraph 8.4 of the Agreement explicitly stated Mrs. Ijaz assumed "any financial responsibility to claims or liens on behalf of the LLC which *predate Visser's acquisition of a fifty percent (50%) ownership interest in the LLC.*" (emphasis added).

38.     To date Mrs. Ijaz still has not effectuated any transfer of membership

7

interest in SEJAL. 1211, LLC to Mr. Visser.

39.     On April 7, 2021, Mr. Visser and Mr. and Mrs. Ijaz met to review every provision within the Commercial Lease. At that meeting the "Acknowledgment" signed by Mr. Visser was not actually part of the Commercial Lease nor was it provided to him separately for his review.

40.     Mr. Visser had no knowledge of the Acknowledgment prior to signing it on April 8, 2021.

41.     The parties took the Commercial Lease to a notary and signed it with the notary sealing the document with their signatures.

42.     Paragraph 5 of the Commercial Lease explicitly requires Defendant Muhammad Ijaz to deposit "50% of the rent payment ($3,250.00) in **each** Landlord's Bank Account" on the first day of each month. (emphasis added). (Exhibit B, ¶5).

43.     The preamble to the Commercial Lease establishes Mr. Visser as one of the Landlords who would deliver possession of the Leased Premises and receive rent deposits under Paragraph 5. even though SEJAL. 1211 LLC is listed as the "Landlord."

44.     Mr. Visser has a direct contractual connection to Mr. Muhammad Ijaz by virtue of his right to receive rent payments under Paragraph 5 of the Commercial Lease.

45.     Unbeknownst to Mr. Visser, following their initial discussions and understanding of the Commercial Lease, but before notarization, either Mr. or Mrs. Ijaz deceptively slipped in a separate document to sign (the Acknowledgement), which page was NOT notarized, to which Mr. Visser would agree to a reduction of his ownership interest to 32%.

46.     During their time with the notary to sign the Commercial Lease Mr. Visser

initialed every page that was presented to him and then signed the final page of the Commercial Lease. He was then asked to sign the Acknowledgment and did so because he inherently trusted that what Mr. and Mrs. Ijaz wanted signed was fair.

47.    In a meeting with Mr. and Mrs. Ijaz on April 8, 2021, the provisions of the Acknowledgment were brought to Mr. Visser's attention after the meeting with the notary.

48.    Apparently, the 32% share was derived, unilaterally by Defendants, as follows: of the $700,000.00 that Mr. Visser invested, Mr. And Mrs. Ijaz decided unilaterally to allocate $295,000.00 to repairs and renovations without counting it towards Mr. Visser's ownership acquisition, leaving a balance of $405,000.00 constituting 32% of the original selling price of $1,250,000.00.

49.    This extra page was totally contradictory to both the original Agreement as well as the Commercial Lease, which indicated that Mr. Ijaz was to pay 50% of the rent payments to each landlord, i.e., Mrs. Ijaz and Mr. Visser. (Exhibit B, ¶5), and other provisions that established Mr. Visser would be a 50% owner.

50.    Almost immediately after signing and then closely scrutinizing this surreptitiously inserted page, Mr. Visser rescinded, rejected and repudiated this underhanded attempt to cheat him out of his true ownership percentage of the Business.

51.    On June 8, 2021, Mrs. Ijaz sent Mr. Visser a certified email stating that according to the Agreement, he was supposed to pay an outstanding amount of $220,000.00 by June 27, 2021 (Exhibit A, page 2, ¶5; a true and correct copy of the e-mail is attached hereto as Exhibit "C").

52.    Since the time that the Agreement had been signed, Mr. Visser had already

given Defendants a further $350,000.00 and he had no idea what Mrs. Ijaz was talking about in reference to $220,000.00.

53.    The further $350,000.00 was paid by Mr. Visser to into the Business of which $295,000.00 was allocated unilaterally by the Defendants towards renovations of the gas station at the Property of which he has not been awarded the profits/shares of the greatly enhanced gas station and convenience store.

54.    Moreover, the gas station at the Property, which had been closed, has been reopened since November 30, 2020 and Mr. Visser has not yet received a cent for his ownership of the 50% share; this enhanced the value of the property from $1,250,000.00 to $2,300,000.00 as per the valuation of Broker Bennett Williams Commercial in February 2021.

55.    Notwithstanding Mr. Visser's fulfillment of all his obligations by paying $700,000.00 by November 30, 2020, he has to date never received any payments, either before or after, under either the Agreement or Commercial Lease.

56.    Defendants' failure to make any payment to Mr. Visser is a breach of both the Agreement and the Commercial Lease.

57.    No credit or shares have been allocated to Mr. Visser and he has never received any indication of his 50% ownership being transferred to him, nor has he ever received any of the required monthly payments.

58.    On August 25, 2021, Mr. Ijaz advised Mr. Visser that the arrearages of school taxes were going to cause the Property to be sold at a Sheriff's Sale. (A true and correct copy of the email is attached hereto as Exhibit "D").

59.    On September 10, 2021, counsel for Mr. Visser reached out to counsel for

10

Defendants for information about the Sheriff's sale; Defendants' counsel declined to share any additional information, including whether such a sale was actually taking place and what, if anything, Defendants intended to do about it.

60.    Upon investigation with the Bucks County Sheriff on September 15, 2021, Mr. Visser found out there were two years of unpaid school taxes, 2019 and 2020, in the amounts of $4,599.34 and $9,316.65, respectively. (A true and correct copy of the delinquent tax information is attached hereto as Exhibit "E.")

61.    Upon further inquiry, Mr. Visser was advised by the Sheriff Department that payment in full of the 2019 taxes would stay the sale.

62.    On September 16, 2021, counsel for Mr. Visser, acting on behalf of Mr. Visser, paid $4,985.00 to the Montgomery County Tax Claim Bureau for payment in full of the 2019 taxes for the Property as well as a small amount of the 2020 taxes and notified counsel for Defendants by email that same day. (A copy of the email is attached hereto as Exhibit "F.")

63.    Mr. Visser did so despite no legal obligation to do so.

64.    Unbeknownst to Mr. Visser, on September 8, 2021, and prior to Mr. Visser counsel's reaching out to Defendants' counsel, "Bright, Inc." had made a $6,000.00 payment to the Montgomery County Tax Claim Bureau for 2019 taxes for the Property.

65.    Subsequently, on September 15, 2021 Defendants made a payment of $4,600.00 to the Montgomery County Tax Claim Bureau for the balance of the 2019 taxes.

66.    Mr. Visser learned of these payments on September 20, 2021 by an email

from counsel for Defendants. (A copy of the email is attached hereto as Exhibit "G").

67.    As a result of these unknown payments, it appears that all of the $4,985.00 paid by Mr. Visser has been allocated for the 2020 tax arrearages and he should be credited accordingly.

## COUNT I – BREACH OF CONTRACT (AGREEMENT)

68.    Plaintiff incorporates by reference Paragraphs 1 through 67 of his Amended Complaint as if set forth at length herein.

69.    Prior to entering into the Agreement with Mrs. Ijaz, on June 12, 2018, Mr. Visser and Mr. Ijaz had entered into a Loan Agreement ("Loan Agreement") whereby Mr. Visser loaned Mr. Ijaz $100,000.00 and in return, Mr. "Ijaz shall be responsible to pay Visser $1000 a month in interest which shall remain due and owing until Ijaz either pays off the balance of the $100,000.00 loan, or the date that Visser acquires an interest in the Property." Paragraphs 5 and 7, Loan Agreement. (A true and correct copy of the Loan Agreement is attached hereto as Exhibit "H").

70.    With respect to the Loan Agreement, Mr. Ijaz was obligated to tender the monthly $1000.00 interest payments to Mr. Visser no later than the 30th of each month, beginning June 30, 2018. (Exhibit G, ¶ 8).

71.    The $100,000 loan was subsequently allocated as partial payment towards the $350,000 initial payment recognized in the 2019 Agreement. (Exhibit A, ¶3). To date, Mr. Ijaz has not repaid the loan.

72.    Moreover, to date, Mr. Visser has not received his promised ownership interest in the Property.

12

73.    The actions or inactions by Mr. Ijaz constitute a breach of the Loan Agreement.

74.    The Loan Agreement states that "In the event that Ijaz is in breach of this agreement by failing to tender interest payments within ten (10) days of the date that they are due and owing, and it is determined by a court of law that Ijaz is in breach of the agreement, Ijaz agrees to pay Visser's reasonable attorney's fees to recoup payment for the monies owed." (Exhibit H, ¶ 9).

75.    Pursuant to the terms of the Agreement between the Mr. Visser and Mrs. Ijaz, Defendant Mrs. Ijaz was obligated to transfer 50% of the ownership in the Business in exchange for Plaintiff investing $625,000.00 in the Business.

76.    Plaintiff made all of his payments to the Business as required by the terms of the Agreement (although Mr. Visser ultimately made $700,000.00 in payments, reflecting his additional payments to cover the cost of stocking the convenience store at the Property). Contributions above $650,000 were needed by Mr. Visser to purchase inventory for the convenience store on the property and operated by Mr. Ijaz.

77.    Despite repeated demands, Defendant Shaista Ijaz has failed and refused to make the agreed upon transfer.

78.    In contrast, Plaintiff has fully complied with all of his obligations.

79.    Defendant Mrs. Ijaz breached the terms of the Agreement with Plaintiff by failing to transfer the Fifty-Percent (50%) ownership interest, by failing to pay any of the pro rata monthly dividend from the time the Agreement commenced and by engaging in bad faith behavior.

13

80.    The Loan Agreement was subsumed or merged into the later Agreement and did not specifically repeal or replace the terms of the Loan Agreement.

81.    The active status of the terms of the Loan Agreement entitle Plaintiff to an award of attorneys' fees.

82.    As a direct and proximate result of Defendants' conduct, Plaintiff has and shall sustain monetary damages to be established at the trial of this matter.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants for:

(1) Compensatory damages;

(2) Additional consequential damages;

(3) Attorneys' fees and costs as allowable by the terms of the Loan Agreement; and

(4) Such other and further relief as this Court deems appropriate.

## COUNT II – BREACH OF CONTRACT – (COMMERCIAL LEASE)

83.    Plaintiff incorporates by reference Paragraphs 1 through 82 of his Amended Complaint as if set forth at length herein.

84.    Pursuant to the terms of the Commercial Lease, Defendant Muhammad Ijaz was obligated to deposit fifty percent (50%) of the rent payment due into Plaintiff's bank account.

85.    Defendant Mr. Ijaz breached the terms of the Commercial Lease with Plaintiff by failing to deposit the stipulated amount of rental payment into Plaintiff's bank account by engaging in bad faith behavior.

14

86.     In contrast, Plaintiff has fully complied with all of his obligations under the Commercial Lease.

87.     As a direct and proximate result of Defendant's conduct, Plaintiff has and shall sustain monetary damages to be established at the trial of this matter.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants for:

(1) Compensatory damages;

(2) Additional consequential damages;

(3) Such other and further relief as this Court deems appropriate.

## COUNT III–FRAUD (AGAINST IJAZ DEFENDANTS)

88.     Plaintiff incorporates by reference Paragraphs 1 through 87 of this Amended Complaint as if set forth at length herein.

89.     In order to induce Plaintiff to sign the Commercial Lease Agreement, Defendants represented to Plaintiff that Defendant Muhammad Ijaz would be responsible for school taxes.

90.     Moreover, at that time of discussion of the Commercial Lease Agreement, Defendants intentionally concealed from Plaintiff that school taxes were significantly in arrears, in contradiction to representations made by Mrs. Ijaz as evidenced by Paragraph 11 of the Agreement.

91.     At the time of the signing and notarizing of the Commercial Lease Agreement, Defendants surreptitiously slipped in an additional page to the agreement, without notification or explanation to Plaintiff, which reduced his ownership interest in

15

the Business from 50% to 32% without any justification (on the same day it was agreed Mr. Visser was to receive 50% of the rent proceeds).

92.     All of the actions taken by Defendants Mr. and Mrs. Ijaz were intentional and with the purpose of deceiving Plaintiff to deprive him of his legal interest in the Business or other funds.

93.     At the time Defendants made these representations, they knew them to be false.

94.     Defendants' material misrepresentations were made with either actual knowledge of their falsity or in reckless disregard of their truth and falsity.

95.     In justifiable reliance upon the representations of Defendants, Plaintiff incurred significant expense and losses.

96.     Plaintiff would not have made any investments to Defendants had he known the truth as to Defendants' propensity for deception.

97.     Plaintiff finally realized recently that Defendants were never going to honor the promises they made and that he had been defrauded by them.

98.     Defendants are liable for the misrepresentations made.

99.     Defendants' conduct was shocking and outrageous.

100.    The actions of Defendants entitle Plaintiff to recover punitive damages.


WHEREFORE, Plaintiff demands judgment in his favor and against Defendants for all damages incurred by the Plaintiff as a result of Defendants' fraud, for all costs and fees allowable under the law, punitive damages, and for such other and further relief as this Court deems appropriate and just.

## JURY TRIAL DEMAND

Plaintiff hereby makes his request for a jury trial for all claims raised in this

action.

Arthur D. Goldman
Attorney for Plaintiff Owen Visser
P.O. Box 115
Paoli, PA 19301
(484) 343-2856

Dated:  October 15, 2021

## VERIFICATION

I, Owen Visser, verify that I am authorized to make this verification, and state that the facts set forth in the foregoing Amended Complaint are true and correct to the best of my knowledge, information and belief. I understand that false statements therein are subject to the penalties of 18 Pa.C.S. Section 4904 relating to unsworn falsification to authorities.

_____
OWEN VISSER

Date: 10/15/21

# EXHIBIT C

## MEDIATION SETTLEMENT AGREEMENT

This 4th day of March, 2022, a mediation was held in regard to the matter captioned *Owen Visser v. Sejal 1211, LLC, Muhammad Ijaz, and Shaista Ijaz*, pending in the Bucks County Court of Common Pleas as Civil Action No. 2021-04478 ("Litigation"). Nancy J. Glidden, Esquire presided over the mediation as the Mediator. The parties participating in the mediation included Owen Visser represented by Arthur Goldman, Esquire and Ethan Quirin Esquire, and Muhammad Ijaz represented by John Haltzman, Esquire.[1]

Now therefore the parties acknowledge and agree as follows:

1.    Owen Visser's equity interest on the sale of the real property owned by Sejal 1211, LLC identified as 300 North Easton Road, Horsham, PA ("Property") is as follows (notwithstanding any other language contained in any previous agreement):

      i.    Mr. Visser shall receive 32% of the profits upon the sale of the Property for any amount received up to $1,250,000; and

      ii.   Mr. Visser shall receive 50% of the profits from the sale of the Property for any amount over $1,250,000.

2.    It is acknowledged and agreed by the undersigned parties that the Commercial Lease dated April 8, 2021, shall be amended to provide that Mr. Visser shall receive $2,500 per month beginning April 1, 2022 (rather than the $3,250 set forth in the Lease), and Mr. Visser shall receive the sum of $15,000 on April 1, 2022, as full payment for any amounts due and owing under the Lease to Mr. Visser (*ie*. arrearage).

3.    Mr. Visser's obligation for School Tax under the Commercial Lease shall be limited to 32%.

4.    Other than the changes set forth above, the remaining terms of the Agreement to Transfer Membership Interest in SEJAL, dated June 27, 2019, and the Commercial Lease dated April 8, 2021, shall remain unchanged, including without limitation, the fact that the Mortgage on the Property shall be the responsibility of SEJAL and not Mr. Visser.

---

[1] It was represented by Attorney Haltzman that Mr. Ijaz had authority to participate in the mediation as a representative of Sejal 1211, LLC and to bind the LLC and Shaista Ijaz to this Agreement.

5.    The parties agree that Mr. Visser's daughter, Brittney Visser, is designated as Mr. Visser's successor in interest for purposes of any monies to be paid to Mr. Visser.

6.    The hearing presently scheduled in Bucks County Court of Common Pleas for Friday, March 11, 2022, shall be cancelled.

7.    On or before April 15, 2022, the parties will file Praecipes to settle, discontinue and end the Litigation with prejudice.

In Witness Whereof and intending to be legally bound hereby, the parties hereto and their respective counsel have set their hands and seals the day and date first above written, with facsimile and counterpart signatures being acceptable.

_____
Owen Visser

_____
Muhammad Ijaz, Individually

_____
Ethan Quirin, Esquire

_____
Mark Haltzman, Esquire

*Counsel for Owen Visser*

*Counsel for Sejal 1211, LLC*
*Muhammad Ijaz & Shaista Ijaz*

# EXHIBIT D

Hi Mr. Visser
Thank you so much
for your time &
cooperation in
ongoing gas station
situation.
We have listed our
gas station in our gas
station buyer
community
news paper market
from the day We
spoke to you.
Potential buyers  are
visiting & viewing the
site,and some people
showing  interest
with questions,so far

with questions,so far
one customer has
offered 1.5 Million.
As of right now We
are waiting for his
written offer and also
waiting for some
better offers
As we spoke to you
we will pay you
$2500 dollars your
monthly payment at
closing day
separately
Regards
Shaista ijaz

09:59

Thank you it's a
pleasure

Thank

07:39

**Voice call**

**11 min**          11:59

**Tue, 04 Mar**

Morning Mo .. I accept the offer of $1,425,000 with my portion being $525,000 .i will send you my banking details once the offer is confirmed. Thank you

02:00

# EXHIBIT E

## PAYOFF SETTLEMENT AGREEMENT

This Agreement, (hereinafter the "Agreement") entered into as of the _28_day of March 2025, is by and among Mr. Owen David Traver Visser 14 -Somerset Street Florida Park Johannesburg, South Africa Postal Code 1709 and Muhammad and Shaista Ijaz 263 - Clover Hill Court Yardley, PA 19067 entered into a Mediation Settlement Agreement on 4th March 2022. the Parties desire to amend that agreement as follows:

### NOW, THEREFORE, in consideration of the foregoing, it is hereby agreed:

### PARTY, NO. 1 MR. OWEN VISSER.

As discussed, I Mr. Owen David Traver Visser will not participate in the owner financing mortgage agreement, and also will not participate in the sale and purchase agreement and I want my committed portion of $ 492,500.00 to be paid into my Wells Fargo Bank Account, No. 6033378271 Routing No. 031000503 until repayment starts my monthly income will still be $2,500.00, once repayment starts, I will drop monthly income to $1500.00 until payment is completed.

Regards

Owen David Traver Visser

### PARTY, NO.2 SHAISTA AND MUHAMMAD IJAZ

As discussed, with Mr. Owen Visser I Muhammad Ijaz and Shaista Ijaz 263 - Clover Hill Court Yardley, PA 19067 agree and confirm and accept the final offer from Mr. Owen David Traver Visser 14 -Somerset Street Florida Park Johannesburg, South Africa Postal Code 1709.

Thank you Confirmed and Accepted.

Best Regards

Shaista & Muhammad Ijaz

a) This Agreement supersedes any and all previous agreements, and represents the entire agreement, among the Parties pertaining to the subject matter hereof.

b) The Parties agree that they will not make, assert, or maintain against one another any claim, demand, action or Lawsuit arising out of, or in connection with, any claim released by this Agreement.

IN WITNESS WHEREOF, the parties have set their hands and seals on this _28_day of March 2025.

SIGNATURE:

_____

OWEN DAVID TRAVER VISSER

_____

MUHAMMAD IJAZ

_____

SHAISTA IJAZ

DATED: 28th March 2025

2

# EXHIBIT F



‎☰    ⌂realtor.com®    ◯

‹ **Back**    [ Horsham, PA                    ✕ ]



Fly around

<u>What's your equity? (It's easy to find ou</u>

Off Market

**2,448** sqft    **0.6** acre lot

300 Easton Rd, Horsham, PA 19044                    <u>View on Map</u> 📍

🏠 **Other**          🔧 **1955**
Property type        Year built

🗓 **$2.05M in 2025**   💲 **$838**
Last sold            Price per sqft

( _____ View as owner _____ )    ( Share )

iNSURiFY  <u>Get coverage for your home in minutes</u>

## Interested in selling 300 Easton Rd?

**Estimated value***

# $2,082,071

*Estimation is calculated based on tax assessment records, recent sale prices of comparable properties, and other factors.

( _____ See your offers _____ )

Compare agents with **RealChoice™ Selling**, find a trusted expert

**300 Easton Rd, Horsham, PA 19044**    ✎  ⬆

⭐ See real reviews and ratings



**Dominique Ferguson**
Real Broker LLC #3278580

| 98 | 7 years |
| --- | --- |
| Sold | Experience |

[ View proposal ]



[ Featured ]

**Clyde Maynard**
Real Broker (PA) #RS349415

| 3 | 6 years | $100K – $1M |
| --- | --- | --- |
| Sold | Experience | Price range |

[ View proposal ]

---

## 🏠 Property details                                                    ⌃

☰ **More**

**Location**
- Zoning: GC 2

**Lot size and SQFT**
- Living Area: 2448

**Interior Features**

Show more ⌄

---

### Find out more about this property.

[ Contact agent ]

PayPal Open        **Seal the deal in fewer clicks
                    with expedited guest checkout**         Get F

**300 Easton Rd, Horsham, PA 19044**                    ✏  ⬆

**Local Home Services**
Advertisement

### Home Insurance

Insurify – Top home insurance quotes w/ 9,000+ reviews

**COMPARE QUOTES**

Presented By



### Financial Services

US Military & Veterans $100,000 Home Giveaway. See Off. Rules

**ENTER NOW**

Presented By

WIN $100,000

---

🏠 **Home value** ⌄

**RealEstate℠**

Chart                               Table



**Unlock RealEstate℠ data**

We provide up to three estimates for
a comprehensive view of home value.

**Sign up to unlock**

| Valuation provider | Estimate |
|---|---|
| Quanterium | $2,080,866 |

ⓘ **Is this your home?**

Start tracking home value with monthly updates and tips to maximize your investment. **I own this home**

The estimate(s) shown, which come from one or more automated valuation model providers independent of Realtor.com™, represent information that may
provide a helpful starting point for discussions with a real estate agent.

( Contact agent )

---

**300 Easton Rd, Horsham, PA 19044**       ✏️   ⬆️



## Tap into your home's equity

Connect with a lender to explore a Home Equity Line of Credit (HELOC) to access flexible funding for home remodeling projects, debt consolidation, or other financial needs. A HELOC allows you to borrow against your home's equity, often at lower interest rates than other loan options, giving you the ability to draw funds as needed.

Connect with a lender

**Latest home equity rates**

## **Horsham** market trends

A city in Montgomery, PA

Listing price median
**$542,000**

List price/sqft median
**$281**

Sold price median
**$465,000**

Days on market
**25**



300 Easton Rd, Horsham, PA 19044

Nearby home values

| Address | RealEstimate℠ | Bed | Bath | Sqft | Lot (sqft) |
|---|---|---|---|---|---|
| This home : 300 Easton Rd | $2,082,071 | | | 2,448 | 26,112 |
| 235 Horsham Rd, Horsham, PA 19044 | $198,592 | – | – | 1,856 | 4,416 |
| 231 Horsham Rd, Horsham, PA 19044 | $303,925 | – | – | N/A | 6,534 |
| 205 Horsham Rd, Horsham, PA 19044 | $367,300 | 3 | 1.5 | 1,274 | 11,008 |

See more ⌄

## 🏠 Property history                                                          ⌃

📅 **$2,051,000**
Last sold in 2025

💰 **$10,850**
2025 taxes

🔨 **7 permits**
Recorded since 2010

🗝 **70 years old**
Built in 1955

## Price history

**Today**

| Apr 11, 2025 | Sold Public Record | $2,051,000 | $838/sqft |
|---|---|---|---|

**2012**

| Jun 12, 2012 | Sold Public Record | $530,000 -36.53% | $217/sqft |
|---|---|---|---|

**300 Easton Rd, Horsham, PA 19044**      ✏  ⬆

Show more ⌄

## Tax History

| Year | Taxes | Total assessment | | Land | | Additions | |
|------|-------|------------------|---|------|---|-----------|---|
| 2025 | $10,850 | $260,370 | = | - | + | - | |
| 2024 | $10,429 | $260,370 | = | - | + | - | |
| 2023 | $9,789 | $260,370 | = | - | + | - | |
| 2022 | $9,426 | $260,370 | = | - | + | - | |
| 2021 | $9,203 | $260,370 | = | - | + | - | |
| 2020 | $8,986 | $260,370 | = | - | + | - | |
| 2019 | $8,813 | $260,370 | = | - | + | - | |

Show more ∨

The price and tax history data displayed is obtained from public records and/or MLS feeds from the local jurisdiction. Contact your REALTOR® directly in order to obtain the most up-to-date information available.

**Want to get comps?**

Contact agent

## Permit history

| Date | Type of work ⓘ | Project type ⓘ | Project name ⓘ | Status ⓘ |
|------|----------------|----------------|----------------|----------|
| Feb 22, 2024 | Sign | | | Issued |
| Oct 27, 2023 | Renovation/alterations | | | Issued |
| Oct 12, 2018 | Sign | | | Issued |
| Jun 7, 2018 | Tenant fit out | | | Issued |



**Unlock permit history data**

Access public building permits for this property, all in one place.

Sign up to unlock

Already have an account? Login

Show more ∨

The permit history displayed is obtained from public records and provided for informational purposes only. It may not represent the complete permit history for the property. Accuracy is not guaranteed.

**300 Easton Rd, Horsham, PA 19044**     ✎   ⬆

Learn which renovations may increase your property value with our renovation tool.

**Things to consider**

 **Visualize renovations**
Upload a few photos, choose your style, and start creating.    >

**Recommended pros**

These pros are highly rated and have upcoming availability in 19044.

**Popular services**

| Home remodel | General contractor | Handyman |



**CGT Construction LLC**

5 ★★★★★ (55 reviews)
**8 years** in business   Hired   **60 times**

We had already designed and
purchased all the mate... **More**

Get a quote



**Martinez Construction and rep**

4.9 ★★★★★ (14 reviews)
**3 years** in business   Hired   **0 times**

I had to find a contractor quick after a
leaky pip... **More**

Get a quote

 Powered by Thumbtack

By clicking "Get a quote," you agree to Realtor.com's **Terms and Conditions** and **Privacy Policy** as well as Thumbtack's **Terms and Conditions** and
**Privacy Policy**

 **Neighborhood & schools**    ∧

Layers

$459K

$464K

$415K  $394K $484K
$459K

$299K



$535K

$399K

**300 Easton Rd, Horsham, PA 19044**



 Nearby     Schools     Neighborhoods

Map data ©2025 Google   Report a map error

## Horsham city in Montgomery, PA

Nearby      Lifestyle      Transportation

**Daycares**

The Goddard School of Horsham (0.5 mi), We R Family Childcare Services (0.6 mi), Horsham Athletic Club (0.7 mi)

**Groceries**

Barcel USA (0.1 mi), Giant Food Stores (0.4 mi), ACME Markets (0.7 mi)

**Parks**

Large amount of park space nearby

**Restaurants**

Freihofer's (0.2 mi), Pizza Slob (0.2 mi), Main Street Pizzeria and Grille (0.3 mi)

**Show more** ∨

Scores provided by Local logic

Locations provided by **yelp**

**PayPal Open**          **Seal the deal in fewer clicks with expedited guest checkout**           Get F

**Ask a neighborhood expert.**

Contact agent

## Schools

Nearby schools      Elementary      Middle      High      Private

**Pennypack El School**
Grades K-5  |  0.9 mi away  |  276 students  |
★★★★☆  4 reviews

**Keith Valley Middle School**
Grades 6-8  |  0.6 mi away  |  1018 students  |

**300 Easton Rd, Horsham, PA 19044**

?   **Hatboro-Horsham Senior High School**
Grades 9-12 | 2.4 mi away | 1379 students |
★★★★☆ 6 reviews

Contact the school or district directly to verify enrollment eligibility. Location provided by Precisely | Ratings provided by GreatSchools.org

GreatSchools Ratings are based on student performance on state tests, progress over time, and college readiness, in addition to how effectively schools ser...
Show more

## Nearby neighborhoods in Horsham



**West Oak Lane**
156 Listings for sale
$251,500 Median listing p...

**Huntingdon Valley**
71 Listings for sale
$740,000 Median listing ...

**Bustleton**
81 Listings for sale
$427,000 Median listing ...

**Somerton**
62 Listings for sale
$389,000 Median listing ...

Popular searches in Horsham include: Homes for sale in Horsham, PA with big lot, Homes for sale in Horsham, PA with basement, New pr
Show more

## ⚶ Environmental risk                  ⌃

**Flood Factor** Minimal
This property's flood risk is not changing.     ›

**Fire Factor** Minimal
This property's wildfire risk is not changing.     ›

**Heat Factor** Major
7 days above 101°F this year     ›

**Wind Factor** Major
Major risk of severe winds over next 30 years     ›

**Air Factor** Moderate
Risk of poor air quality is increasing     ›

Provided by First Street Foundation ⓘ

**300 Easton Rd, Horsham, PA 19044**        ✎   ⬆

## Connect with an agent

Full name*

Email*

Phone*

Are you selling or buying?*

Connect

By proceeding, you consent to receive calls and texts at the number you provided, including marketing by autodialer and prerecorded and artificial voice, and email, from realtor.com or others about your inquiry and other home-related matters, but not as a condition of any purchase. More...

Additional Information About 300 Easton Rd, Horsham, PA 19044

See 300 Easton Rd, Horsham, PA 19044, a other. View property details, similar homes, and the nearby school and neighborhood information. Use our heat map to find crime, amenities, and lifestyle data for 300 Easton Rd.

The property-related information displayed on this page is obtained from public records and other sources.While such information is thought to be reliable, it is not guaranteed and should be independently verified. Properties labeled Not for Sale are classified as such either because we do not have a record of such properties currently being for sale or because we are not permitted, by contract, law, or otherwise, to designate such properties as currently for sale. For the most accurate and up to date status of this or any other property, please contact a REALTOR®.

**Nearby Cities**

Philadelphia Homes for Sale

Ambler Homes for Sale

Abington Homes for Sale

**See more** ⌄

**Nearby ZIPs**

19446 Homes for Sale

**300 Easton Rd, Horsham, PA 19044**                    ✎   ↥

19044 Homes for Sale

**See more** ⌄

**Nearby Neighborhoods**

West Oak Lane Homes for Sale

Huntingdon Valley Homes for Sale

Bustleton Homes for Sale

**See more** ∨

       

About us

Feedback

Advertise with us

Terms

Agent Blog

Careers

Media room

Agent support

Home Made

Sitemap

Accessibility

Ad Choices

Privacy

Tech Blog

Do Not Sell or Share My Personal Information

Get the app

 

Any services or products provided to residents in the state of Illinois should be conducted by NRDS, LLC from its offices at 3425 N. Kennedy Expressway, Suite 501, Chicago, IL 60610.

© 1995-2025 National Association of REALTORS® and Move, Inc. All rights reserved.